UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELIZABETH STONE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CLARIAN HEALTH PARTNERS, INC. )<br>EMPLOYEE BENEFIT PLAN, )<br>)<br>Defendant. ) | 1:05-cv-0341-JDT-WTL |

**ENTRY DENYING MOTION TO REMAND FOR FAILURE TO**

**EXHAUST ADMINISTRATIVE REMEDIES (Docket No. 28)**[1]

Plaintiff Elizabeth Stone brings this action to collect benefits allegedly owing to her under the Employee Benefit Plan (the "Plan") of her former employer, Clarian Health Partners, Inc. ("Clarian"). Her complaint arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* In it, Ms. Stone contends that the Plan wrongfully denied her claim for disability benefits, despite her having provided "significant medical proof of her disability . . . ." (Compl. ¶ 14.) On June 1, 2005, the Plan moved to remand Ms. Stone's complaint, arguing that she filed the complaint before the expiration of the claim administrator's time to decide her claims. Ms. Stone responded to the motion on September 1, 2005, with a reply brief filed on September 16, 2005. The motion therefore is fully briefed and ripe for determination.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

**I.      BACKGROUND**

The following is the factual background of this case relevant to the instant motion.

Clarian is a consortium of hospitals and healthcare providers located in Indianapolis, Indiana. It employed Ms. Stone as a registered nurse at its Methodist Hospital from December 2001 to April 2004. As a Clarian employee, Ms. Stone participated in its Plan, in a short term disability ("STD") program administered and paid by CIGNA/Life Insurance Company of North America ("LINA"), and a long term disability ("LTD") program administered by LINA and paid by Clarian. Ms. Stone voluntarily enrolled in and paid the premiums for the STD program, while Clarian automatically enrolled her in and paid the premiums for the LTD program (as it did for all other employees).

On June 18, 2004, Ms. Stone applied for STD benefits, contending that she suffered from the following conditions: degenerative joint disease, spondylosis, osteoarthritis, fibromyalgia including neck and joint pain, essential hypertension, glaucoma suspect, irritable bowel syndrome and multinodular goiter with hyperthyroidism. LINA denied her application on three separate occasions, most recently on December 6, 2004. On February 1, 2005, in response to a letter received from Ms. Stone's counsel, LINA sent counsel a letter stating that unless it received additional medical information, it would not change its decision to deny benefits. The next day, it forwarded counsel the administrative record on the STD claim.

On February 24, 2005, Ms. Stone applied for LTD benefits under the Plan. As of the date of this Entry, LINA has not issued a determination on that claim. Ms. Stone asserts that because LINA had previously denied her claim for STD benefits, it refused to consider her claim for LTD benefits. The Plan responds that LINA suspended its evaluation of the LTD application evaluation when Ms. Stone filed a complaint with this court on March 9, 2005. In the complaint, Ms. Stone alleged that LINA improperly denied her application for STD benefits. On June 9, 2004, based in part on LINA's refusal to consider her LTD benefits application, Ms. Stone moved to amend her complaint to add a second claim related to her LTD benefits. The Magistrate Judge approved that amendment on July 26, 2005.

**II.   DISCUSSION**

The Plan requests that this court remand Ms. Stone's complaint to its claim administrator for final decisions on her applications for STD and LTD benefits. With respect to the application for STD benefits, the Plan argues that LINA had not yet decided any internal appeal of the denial of benefits at the time Ms. Stone filed her complaint. And with respect to the application for LTD benefits, the Plan suggests that at the time Ms. Stone filed her complaint, LINA had not rendered any decision on the application. As a result, the Plan argues that Ms. Stone failed to exhaust her administrative remedies, a bar to bringing her two claims for relief arising under ERISA before this court.

**A.    Plaintiff Exhausted Her Administrative Remedies As To Her Claim for Short Term Disability Benefits.**

It is clear from the record that Ms. Stone exhausted her administrative remedies with regard to her claim for STD benefits.  After applying for STD benefits on June 18, 2004, Ms. Stone received a letter of denial from the Plan dated July 29, 2004.  She subsequently received two letters of affirmance of that denial on October 8, 2004 and December 6, 2004.  The December 6, 2004 letter of affirmance states, "[p]lease note that you have exhausted all administrative levels of appeal with us.  No further appeals will be considered."  (Resp. Ex. 4.)  To be sure, in its Reply (but apparently not its initial motion), the Plan concedes that "the claim administrator notified Stone in a December 6, 2004 letter that she exhausted the Plan's administrative remedies with respect to her claim for short term disability ("STD") benefits."  (Reply 7.)  Based on this evidence and concession, the court finds that Ms. Stone exhausted her administrative remedies with regard to her claim for STD benefits, and that the claim is now properly before this court.  Remand of the STD benefits claim would not be appropriate, and therefore is denied.

**B.    The Court "Deems Denied" Plaintiff's Claim for Long Term Disability Benefits, And Thereby Excuses Her From Exhausting Her Administrative Remedies as to That Claim.**

Whether Ms. Stone exhausted her administrative remedies with regard to her claim for LTD benefits is a closer question.  Ms. Stone filed an application for LTD

4

benefits on February 24, 2005.  Not having received a decision on her application by June 9, 2005, she moved this court to amend her complaint to include a claim related to those benefits.  The Magistrate Judge allowed the amendment shortly thereafter.  It is undisputed that at the time the amendment was allowed, LINA had not issued a decision on Ms. Stone's application, and still has not to this day.  The Plan contends that as a result, Ms. Stone could not have exhausted her administrative remedies.  Ms. Stone responds that because the Plan failed to consider her application within the time period permitted by ERISA, the application should be "deemed denied," thereby excusing her from exhausting her administrative remedies.  Furthermore, she asserts that exhaustion of her administrative remedies as to her LTD benefits claim would have been futile because her application was based entirely on the same disabilities asserted in her STD benefits application, which LINA rejected in its entirety throughout the administrative process.

29 C.F.R. § 2560.503-1 establishes the standards for the processing of ERISA disability benefit applications.  It requires that, in most circumstances, a plan administrator notify a claimant of a benefits denial within forty-five days of the filing of an application:

> (3) Disability claims. In the case of a claim for disability benefits, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the plan. This period may be extended by the plan for up to 30 days, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the

5

> claimant, prior to the expiration of the initial 45-day period, of
> the circumstances requiring the extension of time and the
> date by which the plan expects to render a decision.

29 C.F.R. § 2560.503-1(f)(3). Another relevant ERISA provision describes the remedy for a plan's failure to timely consider an application for benefits under § 2560.503-1(f)(3):

> In the case of the failure of a plan to establish or follow
> claims procedures consistent with the requirements of this
> section, a claimant shall be deemed to have exhausted the
> administrative remedies available under the plan and shall
> be entitled to pursue any available remedies [under ERISA]
> on the basis that the plan has failed to provide a reasonable
> claims procedure that would yield a decision on the merits of
> the claim.

29 C.F.R. § 2560.503-1(l).

This language indicates that a plan's failure to make a benefits denial within the prescribed forty-five day period constitutes a constructive denial permitting a claimant to bring a civil action to determine the merits of her claim.[2] *See Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005) (employee's claim for long-term disability benefits was "deemed denied" after expiration of given period); *Jebian v.*

---

[2] While Congress recently amended 29 C.F.R. § 2560.503-1(l) to modify language specifically indicating that an application not timely denied would be "deemed denied," the modification did not eliminate the concept of constructive denials from the provision. *See Stefansson v. Equitable Life Assur. Soc'y,* 2005 U.S. Dist. LEXIS 21723, at *31 (M.D. Ga. Sept. 19, 2005) ("In the Court's view, the current regulation expresses the 'deemed denial' concept as plainly as the former regulation did before the amendments. That the current regulation does not contain the phrase 'deemed denied' is of little practical significance. These are not magic words. The current regulation carries forward the same concept, telling the claimant in simple and straightforward terms what his next course of action is if the plan administrator fails to act in accordance with the applicable procedures.").

*Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098 (9th Cir. 2003) (same); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003) (accepting "deemed denied" principle); *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002) (same); *Hall v. Employee Benefits Manager Analytical Techs., Inc.*, 2001 U.S. Dist. LEXIS 22240 (S.D. Ind. Dec. 14, 2001) (same); *Stefansson v. Equitable Life Assur. Soc'y,* 2005 U.S. Dist. LEXIS 21723, at *31 (M.D. Ga. Sept. 19, 2005) ("If a plan administrator does not follow the claims procedures as set forth in the regulation (*i.e.* does not make a determination within 45 days or within any permissible extensions), the claimant's administrative remedies will be 'deemed' exhausted, leaving him free to pursue 'any available remedies' (*i.e.* free to seek review of the denial in court).")

In the instant case, the Plan committed clear procedural violations of 29 C.F.R. § 2560.503-1(f)(3) by not issuing a timely denial of Ms. Stone's LTD benefits application.[3] As a result, § 2560.503-1(l) permits Ms. Stone to bring an action in this court without having first exhausted her administrative remedies through the Plan's administrative process. Because Ms. Stone did not have to exhaust her administrative remedies as a matter of law as to her LTD benefits claim, her second claim for relief

---

[3] The Plan argues that because Ms. Stone filed this lawsuit, the administrative investigation of her claim became "much more difficult to undertake." (Mot. 3.) It also suggests that a January 27, 2005 letter (Mot. Ex. 2.) from Ms. Stone's counsel "caused it to fail to render a decision on the LTD claim . . . ." (Mot. 3.) This argument does not make any sense. Counsel sent the January 2005 letter nearly a month before Ms. Stone even filed her LTD benefits application, and the letter addressed her STD claim alone. Therefore, the letter should have had no effect on the Plan's consideration of Ms. Stone's LTD benefits application, and did not form an adequate basis for the Plan to refuse to consider that application. (Indeed, the Plan's February 1, 2005 response to counsel's letter (Mot. Ex. 2.) suggests that the Plan understood the letter to pertain to the STD claim alone.) Regardless, the reasons for the Plan's failure to timely consider Ms. Stone's application are of no import to the court's analysis here.

therefore is properly before this court.[4]  Remand of the claim would not be not appropriate, and thus is denied.

### III.    CONCLUSION

For the reasons stated above, the court **DENIES** Defendant's Motion to Remand for Failure to Exhaust Administrative Remedies (Docket No. 28).

ALL OF WHICH IS ENTERED this 12th day of December 2005.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Renee J. Mortimer
Hinshaw & Culbertson
rmortimer@hinshawlaw.com

Bridget O'Ryan
boryan@indy.rr.com

Magistrate Judge William T. Lawrence

---

[4] Given this finding, the court need not reach Ms. Stone's futility argument.  However, if it were to take up the issue, it would likely find that the Plan's administrative remedies would have not been futile.  Other than Ms. Stone's supposition, there is no evidence before the court indicating that if the Plan were to consider her claim, it would not proceed in good faith, a requirement for showing futility.  See *Smith v. Blue Cross & Blue Shield United*, 959 F.2d 655, 659 (7th Cir. 1992) ("In order to come under the futility exception, [a plaintiff] must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubt[s] an appeal will result in a different decision.").